UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------
ALEXANDRA SOKOLOVSKY,

                                    Plaintiff,          **MEMORANDUM & ORDER**
                                                        21-CV-01598 (MKB)
                    v.

SILVER LAKE SPECIALIZED CARE CENTER,
SILVER LAKE NURSING HOME, INC. d/b/a
SILVER LAKE SPECIALIZED CARE CENTER,
SILVER LAKE NURSING HOME, MICHAEL
KRAUS, and TINA TORRICELLI,

                                    Defendants.
-------------------------------------------------------------
MARGO K. BRODIE, United States District Judge:

          Plaintiff Alexandra Sokolovsky commenced the above-captioned action on March 25,

2021, against Silver Lake Specialized Care Center, Silver Lake Nursing Home, Inc. doing

business as Silver Lake Specialized Care Center, Silver Lake Nursing Home, Michael Kraus, and

Tina Torricelli.  (Compl., Docket Entry No. 1.)  On June 23, 2021, Plaintiff filed an Amended

Complaint alleging that Defendants violated the overtime provision of the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 207;[1] violated the NYLL's wage deduction, overtime, notice and

record-keeping, wage statement, and spread-of-hours provisions, NYLL § 190 *et seq.* and NYLL

§ 650 *et seq.*; retaliated against her in violation of NYLL §§ 215, 740–741; discriminated,

retaliated, and subjected her to a hostile work environment on the basis of her race, ethnicity,

---

          [1]  Despite multiple references to "FLSA Plaintiffs," (Am. Compl. ¶¶ 25, 368), and one
reference to "Rule 23 Plaintiffs," (*id.* at 52), the Court does not understand Plaintiff to be
presenting claims on behalf of a purported class.  (*See* Pl.'s Mem. in Opp'n to Defs.' Mot. ("Pl.'s
Opp'n") 12, Docket Entry No. 31 ("[H]ere, there is a single plaintiff on behalf of herself [who]
does not purport to represent a class or similarly situated employees.").)

ancestry, citizenship, and national origin in violation of 42 U.S.C. § 1981; retaliated against her, subjected her to a hostile work environment, and discriminated against her on the basis of religion and national origin in violation of the New York State Human Rights Law, New York Executive Law § 290 *et seq.* ("NYSHRL") and the Administrative Code of the City of New York § 8-101 *et seq.* ("NYCHRL"); committed civil assault and battery against her; and intentionally inflicted emotional distress upon her.  (Am. Compl., Docket Entry No. 17.)  Plaintiff also brings aiding and abetting claims under the NYSHRL and NYCHRL against Kraus and Torricelli individually.  (*Id.*)

Defendants move to dismiss the Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiff opposes the motion.[2]  For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.  With respect to the dismissed claims, the Court grants Plaintiff leave to file a second amended complaint within thirty days of the filing of this Memorandum and Order.

I.   **Background**

a.   **The parties**

Plaintiff is from Russia, (*id.* ¶ 77), speaks English as a second language, (*id.*), and immigrated to the United States in March of 1990,[3] (*id.* ¶ 187).  Silver Lake operates a rehabilitation and nursing home on Staten Island, (*id.* ¶ 22), where Plaintiff was employed for

---

[2]  (Defs.' Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 28; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 28-1; Pl.'s Opp'n; Defs.' Reply Mem. in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 29.)

[3]  The Court assumes the truth of the factual allegations in the Amended Complaint for the purposes of this Memorandum and Order.

over twenty-five years before being fired in August of 2019, (*id.* ¶¶ 1, 7).  Kraus is the owner of Silver Lake and was Plaintiff's supervisor.  (*Id.* ¶ 30.)  Torricelli became Plaintiff's manager in June of 2018.  (*Id.* ¶ 97.)

> **b.  Plaintiff's compensation and work hours**

From 1994 until April of 2017, Plaintiff worked for Defendants as a respiratory therapist.  (*Id.* ¶ 44.)  In April of 2017, Plaintiff began working for Defendants as a registered nurse five days per week and a respiratory therapist for one day per week.  (*Id.* ¶ 45.)  Plaintiff routinely "worked more than forty [] hours" each week.  (*Id.* ¶ 46.)  However, Plaintiff's time as a registered nurse for Defendants did not require her to use the specialized knowledge that she had attained through her nurse's training.  (*Id.* ¶¶ 47–50.)

Defendants did not compensate Plaintiff as a salaried employee.  (*Id.* ¶¶ 54, 57.)  Instead, Defendants paid Plaintiff $49 per hour for her work as a registered nurse and $43.75 per hour for her work as a respiratory therapist.  (*Id.* ¶¶ 55, 56.)  Defendants did not pay Plaintiff for all the hours that she worked, and Defendants frequently required her to work additional hours beyond her scheduled shifts.  (*Id.* ¶¶ 60–62, 70, 83.)  Plaintiff's uncompensated work often involved home visits for Silver Lake executives' family members, including Kraus's father.  (*Id.* ¶¶ 87, 95 n.2.)  Plaintiff was paid weekly at most for thirty-five hours of work as a registered nurse, (*id.* ¶ 61), and seven hours as a respiratory therapist, (*id.* ¶ 62), despite working "at minimum, fifty-six hours each week," (*id.* ¶ 71).  Plaintiff was occasionally paid, "at the incorrect rate," for working more than forty hours per week,[4] (*id.* ¶ 76), but she did not receive a statement of wages with her

---

[4]  Plaintiff's compensation allegations are often inconsistent.  Plaintiff states that she was "denied compensation for all hours worked, including hours worked in excess of [forty] hours per workweek." (Am. Compl. ¶ 10).  Plaintiff also claims that she was not compensated "for hours over forty at any rate: not at the minimum wage, her straight-time rate of pay, or her

individual paychecks, (*id.* ¶¶ 39, 212).  In addition, when "Plaintiff worked less than [thirty-five] hours per week, Defendants deducted her pay and she was only paid for the hours worked as recorded by the time clock system."[5]  (*Id.* ¶ 64.)

**c.  Allegations of religious and ethnic discrimination**

Plaintiff was not compensated for all the hours that she worked, in part, because of Defendants' animus regarding her Russian ethnicity and ancestry, and their belief that they could take advantage of Plaintiff because she is from Russia and English is her second language.  (*Id.* ¶ 77.)  Plaintiff's superiors made "intentionally discriminatory comments about Plaintiff's Russian ethnicity and ancestry, and her Jewish ethnicity based upon the fact that she was not as observant as her bosses."  (*Id.* ¶ 9.)  Kraus remarked upon Plaintiff's "manners of Russia" and called her "an embarrassment to Jews."  (*Id.* ¶¶ 78, 80.)  In her attempts to "becom[e] a more observant Jew," (*id.* ¶ 98), Plaintiff "requested to leave early on Fridays due to Shabbat observance," but her requests were often ignored, and she "was forced to remain and work on Shabbat," (*id.* ¶ 101).

On August 6, 2019, in response to an email from Plaintiff seeking clarification about the proper method for communicating with superiors, Kraus chided Plaintiff, stating that "calling is a formal method of communication in this country, although I cannot speak for the manners of Russia."  (*Id.* ¶ 163.)  Plaintiff also recorded several statements by Silver Lake employees about

---

overtime rate."  (*Id.* ¶ 75.)  Despite these claims of complete nonpayment — for hours below and in excess of a forty-hour workweek — Plaintiff claims that "Defendants paid [her] by check on a weekly or biweekly basis," (*id.* ¶ 66), and that "on arbitrary occasions . . . Defendant chose . . . to pay [her] for some of the hours that she worked over forty," (*id.* ¶ 76).

[5]  Plaintiff also claims that Defendants "failed to pay [her] the time worked as recorded by [Defendant's] time tracking devices."  (*Id.* ¶ 36; *see also id.* ¶ 60 ("Defendants purposefully failed to pay Plaintiff those hours worked as recorded by the time clock system.").)

Plaintiff's identity.  (*See id.* ¶¶ 192–195.)  In a recording near the time of Plaintiff's termination, Kraus complained that Plaintiff was "whining" about observing Shabbat.  (*Id.* ¶ 193.)  In a different recording "right before" Plaintiff's firing, Kraus told Plaintiff that he was "disappointed and embarrassed because you're an embarrassment to Jews."  (*Id.* ¶ 194.)  In another recording, Kraus screamed at Plaintiff and told her: (1) "I want to burn the whole Silver Lake down"; (2) "You are nothing but a bunch of babies"; and (3) "You are the worst example of a Jew."  (*Id.* ¶ 195.)

### d.   Plaintiff's complaints and Defendants' alleged retaliation

During her employment, Plaintiff contends that she "was expected to look the other way when it came to severe health code violations, egregious falsification of reports and other compliance concerns" at Silver Lake.  (*Id.* ¶ 133.)  In response to Plaintiff's complaints about conditions at Silver Lake, Defendant did not pay her overtime and suspended her without pay for one week.  (*Id.* ¶¶ 7, 149.)

### i.   Plaintiff's interactions with Torricelli

Beginning in June of 2018, with Torricelli's new role as Plaintiff's "direct supervisor," (*id.* ¶ 101), Plaintiff's experience at Silver Lake began to change, (*id.* ¶ 97).  Plaintiff began enduring verbal abuse in response to her complaints about compliance issues overlooked by Torricelli.  (*Id.* ¶ 98.)  When Plaintiff attempted to raise her concerns with Kraus and non-defendant Simone Krause — whom Plaintiff identifies as "her manager[]," (*id.* ¶ 99), and "one of the heads of Silver Lake," (*id.* ¶ 101) — her complaints were dismissed, (*id.* ¶ 99).

On July 20, 2019, Plaintiff memorialized her complaints in an email to Michael Kraus, Simone Krause, and Joy Tiriano.[6]  (*Id.* ¶ 101.)  Plaintiff informed her superiors that "Torricelli

---

[6]  Tiriano's position at Silver Lake is not mentioned in the Amended Complaint.

has been creating a very hostile environment," including "curt comments and negative critique[s]." (*Id.*) Plaintiff specified that the environment caused her "extreme anxiety" because Torricelli's "intimidation and tactics [were] taking a toll on [Plaintiff's] ability to give the patients [her] best." (*Id.*) Plaintiff's email also noted her concern that licensed practical nurses, with Torricelli's consent, were completing tasks which they were not authorized to undertake. (*Id.*) In a follow up message on July 22, 2019, Plaintiff requested "assurance from management that the hostility [Torricelli] is creating towards me will cease and that policies will be put in place that create[] a safer environment." (*Id.* ¶ 108.) Defendants did not acknowledge or respond to Plaintiff's second email. (*Id.* ¶ 109.) In the period immediately following her emails, Plaintiff "was scrutinized, picked upon, and construed . . . in the worst possible light in an attempt to either force [Plaintiff] to quit or create a pretext to terminate her employment." (*Id.* ¶ 111.)

### ii. Plaintiff's suspension

In late July of 2019, Plaintiff learned from a discussion with a coworker that "Krause personally installed 'EMR' software on [the coworker's] personal computer." (*Id.* ¶ 113.) EMR "is an electronic record of health-related information on an individual that can be created, gathered, managed, and consulted by authorized clinicians and staff within one health care organization." (*Id.*) "Having EMR information of a facility's patients on a personal computer is in stark violation of HIPAA privacy rules." (*Id.* ¶ 114.)

On July 24, 2019, Plaintiff sent an email to Torricelli, the Krauses, and Joy Tiriano requesting "assistance with completing" patient care plans and asking if it was "possible to have the system installed in my personal laptop computer or the facilities laptop . . . [because] by doing so I can complete the care plans in the evening at home." (*Id.* ¶ 119.) In response to

Plaintiff's email, Simone Krause sent Plaintiff a text message asking, "which supervisors have access at home," and informing Plaintiff that she and Michael Kraus were unaware of Silver Lake employees' remote access to EMR.  (*Id.* ¶¶ 120–21.)

On July 25, 2019, Torricelli convened an emergency meeting for "senior-level nursing staff in a deliberate effort to embarrass [Plaintiff] and alienate her from her colleagues."  (*Id.* ¶ 123.)  During the meeting, Torricelli asked the group "who is taking home health care plans?"  (*Id.* ¶ 124.)  Torricelli made her inquiry "in a way to assure that [Plaintiff] . . . was ousted as a 'whistleblower.'"  (*Id.* ¶ 127.)  Plaintiff excused herself from the room to regain her composure and returned a few minutes later.  (*Id.* ¶ 129.)  Torricelli subsequently stopped the meeting and repeatedly instructed Plaintiff to leave.  (*Id.* ¶¶ 129–131.)  Later that day, Plaintiff sent Torricelli an email stating that Torricelli's words and behavior during the meeting were "menacing" and "intimidating."  (*Id.* ¶ 148.)  Plaintiff asked Torricelli if they could "rectify this and talk in person."  (*Id.*)  On the afternoon of that same day, Torricelli summoned Plaintiff to her office and suspended Plaintiff for one week without pay.  (*Id.* ¶ 149.)  Upon requesting an explanation, Torricelli informed Plaintiff that her suspension was "because I feel like it, and because I said so."  (*Id.* ¶ 150.)

Plaintiff subsequently returned to her floor to retrieve her personal items.  (*Id.* ¶ 153.)  During this time, Kraus called Plaintiff to explain Torricelli's decision.  (*Id.*)  While Plaintiff was still on the phone with Kraus, three Silver Lake employees confronted and placed their hands on Plaintiff.  (*Id.* ¶ 155.)  The employees "clutched [Plaintiff] by her shoulders," "grabbed her personal cell phone," and "then pushed [Plaintiff] toward the facility door, attempting to throw her out of the facility."  (*Id.* ¶ 156.)  On July 26, 2019, Plaintiff filed a police report describing the altercation.  (*Id.* ¶ 157.)  Plaintiff remained suspended until July 31, 2019.  (*Id.* ¶ 158.)  At the

conclusion of Plaintiff's suspension, she was removed from her leadership position and placed in "a 'take-it or leave-it' less-desirable assignment." (*Id.* ¶ 174.) During her week of suspension, Simone Krause offered to pay Plaintiff "off the books" if Plaintiff agreed not to tell anyone. (*Id.* ¶ 159.)

### iii.  In-service education

On August 15, 2019, Silver Lake conducted an "In-Service Education" on corporate compliance. (*Id.* ¶ 170.) During the meeting, a cover sheet was displayed which directed employees to "report any alleged violation internally to compliance officer, Philip Heller." (*Id.* ¶ 171.) Later that day, Plaintiff called Heller to discuss her recent experience at Silver Lake. (*Id.* ¶ 172.) Heller requested that Plaintiff put her complaints in writing. (*Id.* ¶ 173.) On August 16, 2019, Plaintiff sent an email to Heller detailing her complaints. (*Id.* ¶ 174.) Plaintiff wrote that she was being retaliated against for voicing "several compliance and regulatory concerns" and stated that her requests for religious accommodations were being ignored by Silver Lake management. (*Id.*) In addition, Plaintiff's email memorialized an August 14, 2019 conversation between Plaintiff and Heller. (*Id.*) During that conversation, Heller told Plaintiff, "Alexandra, they want you out of here . . . they want u [sic] gone." (*Id.*) Plaintiff did not receive a response to her August 15, 2019 email. (*Id.* ¶¶ 175–176.)

On August 21, 2019, Plaintiff sent another email to Heller. (*Id.* ¶ 177.) In the email, Plaintiff stated that "the company is trying to break me." (*Id.*) Plaintiff noted that she had been "assigned [to] a new unit without any training or orientation," making her "feel like [she was] being set up to fail." (*Id.*) Plaintiff later learned that Heller was not responding to her complaints because Silver Lake fired Heller on May 31, 2019, more than two months before the corporate compliance training. (*Id.* ¶ 178.)

### iv.   Plaintiff's termination

On August 29, 2019, Defendants fired Plaintiff due to "performance issues."  (*Id.* ¶¶ 197, 93.)  On or around the same day, Plaintiff attended a meeting with Kraus, Torricelli, and others "with decision making authority" over her employment to discuss her July 24, 2019 email and related events.  (*Id.* ¶ 183.)  Torricelli denied retaliating against Plaintiff and stated that she had not read Plaintiff's email, (*id.* ¶ 184), and Mrs. Weingarten[7] advised Torricelli to "put all biases aside because [Plaintiff] is Jewish or Russian," (*id.* ¶ 189).  At the same meeting, "senior level Silver Lake executives" discussed how they would not have hired Plaintiff due to her Russian ancestry.  (*Id.* ¶ 185.)

## II.   Discussion

### a.   Standards of review

#### i.   Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it."  *Huntress v. United States*, 810 F. App'x 74, 75 (2d Cir. 2020) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova*, 201 F.3d at 113); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (per curiam) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). "'[C]ourt[s] must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting

---

[7] Weingarten is not identified in the Amended Complaint.

it.'"  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted) (first

quoting *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); and then quoting

*APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003), *aff'd*, 561 U.S. 247 (2010)).  Ultimately, "the

party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the

evidence that it exists.'"  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239,

243 (2d Cir. 2014) (quoting *Makarova*, 201 F.3d at 113); *see also Suarez v. Mosaic Sales Sols.*

*US Operating Co.*, 720 F. App'x 52, 53 (2d Cir. 2018) (citing *Morrison*, 547 F.3d at 170);

*Clayton v. United States*, No. 18-CV-5867, 2020 WL 1545542, at *3 (E.D.N.Y. Mar. 31, 2020)

(quoting *Tandon*, 752 F.3d at 243); *Fed. Deposit Ins. Corp. v. Bank of N.Y. Mellon*, 369 F. Supp.

3d 547, 552 (S.D.N.Y. 2019) (quoting *Tandon*, 752 F.3d at 243).

> **ii.   Rule 12(b)(6)**

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court "must construe [the complaint] liberally, accepting all factual allegations

therein as true and drawing all reasonable inferences in the plaintiffs' favor."  *Sacerdote v. N.Y.*

*Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d

Cir. 2019)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020)

(same).  A complaint must plead "enough facts to state a claim to relief that is plausible on its

face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533,

540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Cavello Bay Reinsurance Ltd. v. Shubin*

*Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  Although all

allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (quoting *Iqbal*, 556 U.S. at 678).

    **b.** **Plaintiff's FLSA claims**

Defendants argue that the facts alleged in the Amended Complaint do not support Plaintiff's claims under FLSA and must be dismissed. (Defs.' Mem. 1.) In support, Defendants contend that because Plaintiff did not identify a "workweek in which she worked at least [forty] hours and overtime for which she was not compensated," Plaintiff failed to properly plead a FLSA claim. (*Id.* at 7–8.) In addition, Defendants argue that the Amended Complaint was improperly "group pled" in violation of Rule 8(a) of the Federal Rules of Civil Procedure, (*id.* at 8), and because of her supervisory role and salary,[8] Plaintiff was exempt from FLSA's overtime provisions, (*id.* at 8–13). Defendants also argue that Plaintiff's FLSA claims are subject to a

---

    [8] Defendants claim that "Plaintiff was regularly and routinely paid at least $1,531.25 per week, in accordance with her salary for her work as a Registered Nurse, and subsequently received a raise to $1,715.00 per week." (Defs.' Reply. 4–5.) Defendants also claim that Plaintiff's "role was primarily dedicated to managerial activities." (*Id.* at 5.) In support of their arguments, Defendants rely on several documents which the Court declines to consider with respect to Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) ("[T]he district court is normally required to look only to the allegations on the face of the complaint," but "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice." (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007))); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (holding that courts may consider on a motion to dismiss "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" and other documents "integral" to the complaint (first quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); and then quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (alteration in original) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004))).

two-year statute of limitations which precludes her from pursuing claims which accrued prior to March 25, 2019.  (*Id.* at 13–14.)

Plaintiff argues that her overtime allegations are sufficiently pled because she worked at least "fifty-six hours each week," and was not paid "for hours over forty at any rate."  (Pl.'s Opp'n 2 (quoting Am. Compl. ¶¶ 71, 75).)  In addition, Plaintiff argues that she was not exempt from the FLSA provisions and further argues that "the assertion of an overtime exemption [is] an affirmative defense premature for a 12(b)(6) motion[]" because the applicability of such exemptions is a mixed question of law and fact.  (*Id.* at 3–9.)  Plaintiff concedes that a two-year statute of limitation — or three years for willful employer violations — applies to FLSA claims, but notes that the NYLL's statute of limitations is six years.[9]  (*Id.* at 10.)

FLSA "requires employers to pay overtime compensation to covered employees." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1148 (2018).  Those employees must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty hours per week."  *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013); *Pinzon v. Paul Lent Mech. Sys., Inc.*, No. 11-CV-3384, 2012 WL 4174725, at *3 (E.D.N.Y. Aug. 21, 2012) (citing *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089, 2011 WL 4962397, at *3 (S.D.N.Y. Oct. 18, 2011)), *report and recommendation adopted*, 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012).

To survive a motion to dismiss a FLSA overtime claim, "a plaintiff must sufficiently allege [forty] hours of work in a given workweek as well as some uncompensated time in excess

---

[9]  *See Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 198 n.4 (2d Cir. 2013) ("The [statute of] limitations period for the FLSA is two years or, if the violation was willful, three years.  The limitations period for the NYLL is six years.") (citations omitted); *Perez v. De Domenico Pizza & Rest., Inc.*, 204 F. Supp. 3d 494, 495 (E.D.N.Y. 2016) (same).

of the [forty] hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d

Cir. 2013).  A plaintiff must plead more than "the number of hours worked in a typical week and

the alleged time worked without pay." *Nakahata*, 723 F.3d at 200.  "[P]laintiffs must allege

overtime without compensation in a 'given' workweek . . . ." *DeJesus v. HF Mgmt. Servs., LLC*,

726 F.3d 85, 90 (2d Cir. 2013) (quoting *Lundy*, 711 F.3d at 114).  Accordingly, even when a

plaintiff "sufficiently plead[s] that [s]he worked more than [forty] hours a week, properly stating

an overtime claim under the FLSA additionally requires a plaintiff to allege that [s]he was

'uncompensated' for time worked 'in excess of the [forty] hours.'" *Paleja v. KP NY Operations

LLC*, No. 21-CV-286, 2022 WL 364007, at *2 (2d Cir. Feb. 8, 2022) (quoting *Lundy*, 711 F.3d at

114).  Determining whether a given plaintiff has met that burden involves "a context-specific"

inquiry, and "requires the reviewing court to draw on its judicial experience and common sense."

*Lundy*, 711 F.3d at 114 (quoting *Iqbal*, 556 U.S. at 679).

While "a plaintiff need not demonstrate that he or she was not paid overtime for a

particular number of hours in order to sustain a plausible claim of overtime violations,"

*Montenegro v. Laumont Photographics, Inc.*, No. 20-CV-4443, 2021 WL 9032221, at *5

(E.D.N.Y. Aug. 10, 2021), the mere "possibility" of "undercompensat[ion] in violation of the

FLSA" is insufficient "absent any allegation that [p]laintiffs were scheduled to work forty hours

in a given week," *Nakahata*, 723 F.3d at 201.  *See also Paleja*, 2022 WL 364007, at *2 ("While

the facts alleged certainly leave open the possibility that [plaintiff] was insufficiently

compensated for overtime, the 'mere *possibility* of misconduct' is not enough to make out a

*plausible* claim." (quoting *Iqbal*, 556 U.S. at 678)).  The need to specify a lack of overtime in a

"given week," however, does not permit complaints simply "track[ing] the statutory language of

the FLSA," but rather calls for "plaintiffs to provide some factual context that will 'nudge' their

claim 'from conceivable to plausible.'" *DeJesus*, 726 F.3d at 89, 90 (quoting *Twombly*, 550 U.S. at 570).

Plaintiff fails to provide sufficient detail to state her overtime claim.  Instead, Plaintiff makes several claims about her work hours, some of which are contradictory.  Plaintiff claims that "she worked more than forty-hours; sometimes as much as fifty hours per week, and, at times, even longer."  (Am. Compl. ¶ 46.)  Plaintiff also alleges that she "worked, at minimum, fifty-six hours each week, but quite frequently she worked forty-five or more hours per week without ever being paid time-and-half for hours worked beyond forty."  (*Id.* ¶ 71.)  Indeed, Plaintiff claims that she was not compensated "for hours over forty at any rate," (*id.* ¶ 75), before stating that she was paid "on arbitrary occasions . . . for some of the hours that she worked over forty, albeit, at the incorrect rate," (*id.* ¶ 76).  These allegations are insufficient to state a claim because claims "that an employee 'regularly worked' more than forty hours per week are merely legal conclusions that constitute 'little more than a paraphrase of the statute' and cannot, standing alone, establish a plausible claim."  *Bonn-Wittingham v. Project OHR, Inc.*, 792 F. App'x 71, 75 (2d Cir. 2019) (quoting *DeJesus*, 726 F.3d at 89); *see also Gathmann-Landini v. Lululemon USA Inc.*, No. 15-CV-6867, 2017 WL 11704693, at *3 (E.D.N.Y. Mar. 31, 2017) ("Merely alleging that she typically worked more than [forty] hours per week is insufficient to plausibly plead overtime claims under the FLSA and the NYLL.").

Accordingly, the Court dismisses Plaintiff's FLSA overtime claims without prejudice.

### c.   Plaintiff's NYLL claims

Plaintiff claims that Defendants violated the NYLL's overtime, (Am. Compl. ¶¶ 205–208); notice and recordkeeping, (*id.* ¶¶ 209–211); wage statement, (*id.* ¶¶ 212, 213); unlawful deduction from wages, (*id.* ¶¶ 214–218); spread of hours, (*id.* ¶¶ 219–228); and whistleblower

protection, (*id.* ¶¶ 236–248), provisions.

### i.   NYLL overtime claim

Defendants argue that Plaintiff is not entitled to overtime compensation under the NYLL

for the same reasons that they believe Plaintiff is not entitled to FLSA overtime compensation.

(Defs.' Mem. 13, 17.)  In addition, Defendants claim that Plaintiff is exempt from the NYLL's

overtime entitlements because she is a registered nurse.  (*Id.* at 17 n.5.)

Plaintiff argues that NYLL overtime exemption is an affirmative defense which

Defendants must prove.  (Pl.'s Opp'n 9.)  Plaintiff contends that it would be inappropriate to

dismiss her claim on the basis of an overtime exemption at this preliminary stage.  (*Id.* at 9 n.1

(citing *Gayvoronskaya v. Americare, Inc.*, No. 15-CV-6641, 2018 WL 4378162, at *3 (E.D.N.Y.

Mar. 26, 2018)).)

The NYLL "mandates that an employee engaged in interstate commerce be compensated

at a rate of no less than one and one-half times the regular rate of pay for any hours worked in

excess of forty hours per week."  *Nakahata*, 723 F.3d at 200; *Saltos v. GGI Constr. Corp.*, No.

21-CV-6459, 2022 WL 3108622, at *4 (E.D.N.Y. July 18, 2022) ("Like federal law, New York

law requires employers to provide employees with an overtime premium for all hours worked in

excess of 40 hours per week at one and one-half times the regular rate of pay." (first citing

NYLL §§ 650 *et seq.*; and then citing 12 NYCRR § 142-2.2)), *report and recommendation

adopted*, 2022 WL 3100559 (E.D.N.Y. Aug. 4, 2022).  To establish an overtime claim under the

NYLL, plaintiffs must establish that: (1) the defendant was an "employer" as defined by the

statute; (2) they were employees as defined in the statute; and (3) they worked in excess of

[forty] hours in a given workweek without receiving overtime compensation.[10]  *See Nakahata*, 723 F.3d at 200 (quoting *Lundy*, 711 F.3d at 114); *Chex v. CCI Contracting, Inc.*, No. 21-CV-3011, 2022 WL 17787542, at *4 (E.D.N.Y. Aug. 5, 2022) ("To establish an overtime claim under the NYLL, a plaintiff must establish that: (1) he worked in excess of 40 hours in a given workweek without receiving overtime compensation; (2) he was an "employee" as defined in the statute; and (3) the defendant was an "employer" as defined by the statute." (citing *Rodriguez v. Ridge Pizza Inc.*, No. 16-CV-0254, 2018 WL 1335358, at *7 (E.D.N.Y. Mar. 15, 2018))).

The Court dismisses Plaintiff's NYLL overtime claim for substantially the same reasons it dismisses Plaintiff's FLSA overtime claim.  *DeJesus*, 726 F.3d at 89 n.5 ("[T]he relevant portions of New York Labor Law do not diverge from the requirements of the FLSA."); *see also Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 465 n.2 (E.D.N.Y. 2015) ("Overtime claims under the FLSA and NYLL are subject to the same standards.").  Plaintiff claims that she was both not compensated "for hours over forty at any rate," (Am. Compl. ¶ 75), and paid "on arbitrary occasions . . . for some of the hours that she worked over forty, albeit, at the incorrect rate," (*id.* ¶ 76).  Accordingly, the Court dismisses Plaintiff's NYLL overtime claim for failure to state a claim.

### ii.  NYLL spread of hours claim

Defendants argue that Plaintiff's job as a nurse exempts her from the NYLL's spread of hours pay.  (Defs.' Mem. 17; Defs.' Reply 10.)

---

[10]  The NYLL defines "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service" or "acting as [an] employer."  NYLL §§ 190(3), 651(6); *see Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013).  The definition of "employed" under the NYLL is that a person is "permitted or suffered to work."  NYLL § 2(7).

Plaintiff does not directly respond to this argument, but as with her FLSA claim, Plaintiff

argues that Defendants' spread of hours arguments are premature.  (Pl.'s Opp'n 2–3.)

New York law provides that "[o]n each day on which the spread of hours exceeds [ten],

an employee shall receive one additional hour of pay at the basic minimum hourly rate."  12

N.Y.C.R.R. § 146-1.6; *Rana v. Islam*, 887 F.3d 118, 123 n.3 (2d Cir. 2018).  "Spread of hours" is

defined as "the interval between the beginning and end of an employee's workday," and includes

"working time plus time off for meals plus intervals off duty."  12 N.Y.C.R.R. § 146-1.6;

*Vazquez v. Azoulay*, 834 F. App'x 653, 654 (2d Cir. 2021); *see also Rodriguez v. Ridge Rest.,

Inc.*, No. 16-CV-254, 2020 WL 7711859, at *5 (E.D.N.Y. Dec. 29, 2020) (describing the spread

of hours law).  To be eligible for spread of hours pay, an employee must be paid at the minimum

wage.  *See Perossio v. Pure Growth Consulting, LLC*, No. 18-CV-1946, 2023 WL 1368002, at

*1 (S.D.N.Y. Jan. 31, 2023) (noting that the plaintiff is not eligible for spread of hours pay

"because he was paid more than the minimum wage" (citing NYLL § 144-1.6)); *Santiago v.

Thong Sook Corp.*, No. 19-CV-5747, 2021 WL 3423623, at *4 (S.D.N.Y. Aug. 5, 2021) ("A

limitation upon a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff cannot

earn more than the minimum wage."); *Poon v. Apple NYC Corp.*, No. 17-CV-9647, 2019 WL

75674, at *7 (S.D.N.Y. Jan. 2, 2019) ("An award for 'spread of hours' pay for non-restaurant or

hotel workers, however, is appropriate only when the employee is paid the minimum wage.");

*Velasquez v. Digit. Page, Inc.*, No. 11-CV-3892, 2014 WL 6460801, at *4 (E.D.N.Y. Nov. 17,

2014) ("[T]he 'spread of hours' provision does not apply to a plaintiff employee who earns more

than minimum wage.").

Plaintiff has not alleged that she was paid by Defendants at a minimum wage rate and

therefore fails to plead a claim.  Instead, Plaintiff claims that she was paid $49 per hour for her

work as a registered nurse, (Am. Compl. ¶ 55), and $43.75 per hour for her work as a respiratory therapist, (*id.* ¶ 56). Plaintiff also claims that "Defendant failed to compensate [her] for hours over forty at any rate: not at the minimum wage, her straight-time rate of pay, or her overtime rate." (*Id.* ¶ 75.) The Court therefore dismisses Plaintiff's claim because she fails to plead facts which indicate that she was paid at a rate which made her eligible for spread of hours pay. *See Swanson v. Manhattan Beer Distribs., LLC*, No. 15-CV-5383, 2018 WL 4008012, at *9 n.15 (E.D.N.Y. July 10, 2018) (dismissing a spread of hours claim "because it applies only to workers earning minimum wage and plaintiffs, indisputably, are paid in excess of minimum wage"); *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 369 (S.D.N.Y. 2012) (granting summary judgment to defendants on plaintiff's spread of hours claim because plaintiff earned "well above New York's minimum wage"). Accordingly, the Court dismisses Plaintiff's spread of hours claim for failure to state a claim.

### iii.   NYLL wage notice claim

Defendants claim that "documentary evidence demonstrates that Silver Lake provided a wage notice to Plaintiff, which she signed." (Defs.' Mem. 17.) Defendants rely on the declaration of Michael Kraus. (*See* Kraus Decl., annexed to Defs.' Mot. as Ex. 5, Docket Entry No. 28-5.)

Plaintiff notes that "in addition to her FLSA claims, [she] asserts claims under New York's Labor Law," but she does not respond directly to Defendants' wage notice argument. (Pl.'s Opp'n 10.)

The NYLL requires employers to provide a wage notice to an employee at the time of hiring. NYLL § 195(1)(a); *Saltos*, 2022 WL 3108622, at *5; *Carter v. Tuttnaeur U.S.A. Co.*, 78 F. Supp. 3d 564, 569 (E.D.N.Y. 2015) ("As of April 9, 2011, an employer must provide an

employee with a wage notice within ten business days of the start of employment and then annually every February thereafter." (quoting *Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-461, 2014 WL 4207106, at *10 (S.D.N.Y. Aug. 20, 2014), *report and recommendation adopted*, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014))).  This notice must include, among other things, (1) "the rate or rates of pay and basis thereof"; (2) "whether paid by the hour, shift, day, week, salary, piece, commission, or other"; (3) "the regular pay day designated by the employer"; (4) "the name of the employer"; (5) "any 'doing business as' names used by the employer"; and (6) "such other information as the commissioner deems material and necessary." N.Y.L.L. § 195(1); *see also Castro v. Hyper Structure Corp.*, No. 21-CV-0139, 2022 WL 2467242, at *14 (E.D.N.Y. Mar. 7, 2022) ("Section 195(1)(a) of the NYLL requires employers to provide employees at the time of hiring with a wage notice containing, among other things, the rate of pay, the basis thereof, and the pay schedule."); *Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 219 (E.D.N.Y. 2021) (describing the required contents of the wage notice under § 195(1)).  Under the statute, if a wage notice under section 195 is not provided "within ten business days of" the employee's "first day of employment," the employee "may recover in a civil action damages of fifty dollars for each work week that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars."  NYLL § 198(1-b); *see also Carter*, 78 F. Supp. 3d at 570 (citing NYLL § 198(1-b)).  Employees who were hired prior to New York's Wage Theft Prevention Act's enactment on April 9, 2011 "cannot recover statutory damages for an employer's failure to provide wage notices at the time of hiring, as the WTPA does not apply retroactively.''  *Remache v. Mac Hudson Grp.*, No. 14-CV-3118, 2018 WL 4573072, at *16 (E.D.N.Y. Sept. 7, 2018), *report and recommendation adopted*, 2018 WL 4568860 (E.D.N.Y. Sept. 24, 2018).

Plaintiff states that she was hired by Defendants on February 24, 1994, (Am. Compl. ¶

89); Plaintiff is therefore ineligible for wage notice damages because her employment began

prior to the wage notice provision's enactment, *see Campbell v. Canarsie Plaza Liquor*

*Warehouse Corp.*, No. 19-CV-7125, 2022 WL 4539027, at *6 (E.D.N.Y. July 28, 2022)

(recommending dismissal of NYLL wage notice claim where plaintiff "commenced his

employment before the wage-notice provision went into effect"), *report and recommendation*

*adopted*, 2022 WL 4539674 (E.D.N.Y. Sept. 28, 2022); *Dai v. ABNS NY Inc.*, 490 F. Supp. 3d

645, 660 (E.D.N.Y. 2020) (dismissing NYLL wage notice claim where "plaintiffs were hired

before the WTPA's effective date").  Accordingly, the Court dismisses Plaintiff's NYLL wage

notice claim for failure to state a claim.

### iv.   NYLL wage statement claim

Defendants argue that "Plaintiff's NYLL claims fail," (Defs.' Mem. 17), and that the

Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims even

if the Court denies their motion to dismiss Plaintiff's federal causes of action, (*id.* at 16 n.4).

Defendants do not specifically address Plaintiff's wage statement claim.

The NYLL requires employers to give employees a wage statement with each payment of

wages.  *Castro*, 2022 WL 2467242, at *14 (citing NYLL § 195(3)).  The statement must

"contain[] certain information including the hours being compensated, the wages paid, and any

deductions."  *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 598 n.3 (2d Cir. 2020) (citing NYLL §

195(3)); *Dai*, 490 F. Supp. 3d at 660 ("Under Section 195(3), employers must give their

employees accurate wage statements that include the dates and hours worked, the rate of pay and

additional details.").  An employee who is not given these statements may "recover in a civil

action damages of two hundred fifty dollars for each work day that the violations occurred or

continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." NYLL § 198(1-d); *Fisher*, 948 F.3d at 598 n.3. "Under the NYLL, an employer's 'complete and timely payment of all wages . . . to the employee who was not provided notice' or 'who was not provided statements' serves as an affirmative defense to a wage notice or wage statement claim." *Mendez*, 564 F. Supp. 3d at 219 (quoting NYLL §§ 198(1-b); 198(1-d)).

To recover for a wage statement violation in federal court, a plaintiff must demonstrate more than just a defendant's contravention of the wage statement provision because "in suits for damages plaintiffs cannot establish Article III standing by relying entirely on a statutory violation." *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021). "'Standing to sue is a doctrine' that 'limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.'" *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 183–84 (2d Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "To establish Article III standing, 'a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.'" *Liu v. Democratic Nat'l Comm.*, No. 21-CV-3021, 2022 WL 4372587, at *1 (2d Cir. Sept. 22, 2022) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021)). "An injury in fact must be 'particularized,' and it must be 'concrete.'" *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022) (quoting *Spokeo, Inc.*, 578 U.S. at 340). As such, "a bare procedural violation, divorced from any concrete harm," does not "satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc.*, 578 U.S. at 341.

21

"[S]tanding is required for subject matter jurisdiction." *James v. Willis*, No. 21-CV-501, 2022 WL 481812, at *1 (2d Cir. Feb. 17, 2022) (citing *Strubel v. Comenity Bank*, 842 F.3d 181, 187 (2d Cir. 2016)). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)); *Otrompke v. The First Dep't Comm. on Character & Fitness*, No. 20-CV-4107, 2021 WL 5764221, at *1 (2d Cir. Dec. 6, 2021) ("A district court lacks jurisdiction 'when . . . the plaintiff lacks constitutional standing to bring the action.'" (quoting *Cortlandt St. Recovery Corp*, 790 F.3d at 417)); *see also Sanchez v. Ms. Wine Shop Inc.*, No. 22-CV-2178, 2022 WL 17368867, at *9, --- F. Supp. 3d ----, ---- (E.D.N.Y. Nov. 30, 2022) (noting in a NYLL wage statement case that a plaintiff must have standing as to each of their claims "even where the plaintiff has standing to bring jurisdiction-invoking federal claims").

Plaintiff lacks Article III standing with respect to her wage statement claim. Plaintiff claims that "Defendants did not provide [her] with a statement of wages with each payment of wages." (Am. Compl. ¶ 39; *see also id.* ¶ 212.) However, Plaintiff has not alleged any injury resulting from Defendants' alleged failure to provide her with wage statements and has therefore failed to establish subject matter jurisdiction for her wage statement claim. *See Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929, 2023 WL 2206568, at *4–7 (E.D.N.Y. Feb. 24, 2023) (dismissing NYLL wage statement claim where the "[p]laintiff did not link any injury-in-fact that he personally experienced to Defendants' failure to provide statutory notices under the NYLL"); *see also Metcalf v. TransPerfect Translations Int'l, Inc.*, 632 F. Supp. 3d. 319, 341 (S.D.N.Y. 2022) (dismissing a NYLL wage statement claim for failure to "allege an injury in

22

fact sufficient to establish standing"); *Sevilla v. House of Salads One LLC*, No. 20-CV-6072, 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022) (dismissing NYLL wage statement claim for lack of standing where plaintiffs failed to allege a cognizable injury). Accordingly, the Court dismisses Plaintiff's NYLL wage statement claim without prejudice for lack of subject matter jurisdiction.

### v.   NYLL unlawful deductions from wages claim

Defendants argue that Plaintiff's unlawful deduction claims are "unsubstantiated" because the "pay records" produced by Defendants show that Plaintiff has "fail[ed] to set forth a single instance of an improper deduction. (Defs.' Reply 5 n.3.)

Plaintiff requests that the Court exercise supplemental jurisdiction over her state law claims, (Pl.'s Opp'n 12–13), but does not address her unlawful deduction claim other than proposing Defendants' alleged wage deductions as a reason for rejecting Defendants' FLSA overtime exemption arguments, (*id.* at 4–5).

"The history of Labor Law § 193 manifests the legislative intent to assure that the unequal bargaining power between an employer and an employee does not result in coercive economic arrangements by which the employer can divert a worker's wages for the employer's benefit." *Angello v. Lab. Ready, Inc.*, 7 N.Y.3d 579, 586 (2006). To carry out the statute's purpose, section 193 severely limits what employers may deduct from employee wages. NYLL § 193(a); *see also Hudacs v. Frito-Lay, Inc.*, 90 N.Y.2d 342, 346–47 (1997) (discussing the legislative history and purpose of section 193). Pursuant to the statute, employers may only make those deductions required by law or regulation, such as those for federal taxes, *see Hochstein v. United States*, 900 F.2d 543, 549 (2d Cir. 1990) ("The withholding of federal taxes is expressly authorized by New York's Labor Law." (citing NYLL § 193(1)(a))), or those

deductions authorized by the employee for the employee's benefit, *Marsh v. Prudential Sec. Inc.*, 1 N.Y.3d 146, 152 (2003) (citing NYLL § 193(1)(b)).  Even with the employee's consent, deductions are limited to "specific categories of wage withholdings" based on that consent, such as payments for "insurance premiums," "pension or health and welfare benefits," or "United States bonds."  *See Marsh*, 1 N.Y.3d at 152 (quoting NYLL § 193(1)(b)).   "In order to state a claim for a violation of NYLL § 193, a plaintiff must allege a specific deduction from wages and not merely a failure to pay wages."  *Goldberg v. Jacquet*, 667 F. App'x 313, 314 (2d Cir. 2016) (citing *Kletter v. Fleming*, 820 N.Y.S.2d 348 (App. Div. 2006)); *see also Hinterberger v. Cath. Health*, No. 08-CV-380S, 2008 WL 5114258, at *5 n.3 (W.D.N.Y. Nov. 25, 2008) (noting that "section 193 does not stand for the principle that an employer must *pay* an employee all wages due, but rather prohibits an employer from *deducting* wages from an employee's paycheck").  Thus, a plaintiff must "show that [the defendant] deducted monies from [his] earned wages and that such deductions are not permissible under the respective state statute."  *Stolarik v. N.Y. Times Co.*, 323 F. Supp. 3d 523, 543 (S.D.N.Y. 2018) (citing *Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586, 596–97 (S.D.N.Y. 2007)).

Plaintiff fails to allege an unlawful deduction claim because she has not specifically alleged an improper wage deduction.  Plaintiff claims that when she "worked less than [thirty-five] hours per week, Defendants deducted her pay and she was only paid for the hours worked as recorded by the time clock system."  (Am. Compl. ¶ 64.)  However, Plaintiff's claim does not fall within section 193 because, as courts in this Circuit have routinely held, "an employer's alleged failure to pay for all hours worked does not constitute an improper deduction from wages for purposes of [s]ection 193."  *Gordon v. Kaleida Health*, 299 F.R.D. 380, 390 (W.D.N.Y. 2014) (collecting cases); *see also Goldberg*, 667 F. App'x at 314 (affirming dismissal of section

193 claim where Plaintiff alleged that he "did not receive wages to which he was entitled");

*Jensen v. AR Glob. Invs., LLC*, No. 19-CV-657, 2020 WL 1322584, at *7 (S.D.N.Y. Mar. 20,

2020) (dismissing section 193 claim "premised on an alleged wholesale withholding of his

wages").  In addition, although Plaintiff also claims that "Defendants made unlawful deductions

from [her] wages including, but not limited to, deductions for meals she never ate," (Am. Compl.

¶ 216), Plaintiff does not support this conclusion with any facts concerning Defendants' alleged

deductions from which the Court could determine the viability of Plaintiff's claim.  Moreover,

wage deductions for meals are not per se unlawful.  *See Rahman v. Limani 51, LLC*, No. 20-CV-

6708, 2022 WL 3927814, at *5 (S.D.N.Y. Aug. 31, 2022) ("New York Labor Law permits meal

deductions only when an employee has 'customarily eaten' meals provided by an employer."

(first citing N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-3.7; then citing *De Jesus v. P&N

Cuisine Inc.*, No. 20-CV-3619, 2021 WL 2380065, at *11 (S.D.N.Y. June 10, 2021)));

*Maldonado v. Papadopoulos*, No. 20-CV-6850, 2021 WL 5363016, at *7 (S.D.N.Y. July 17,

2021) ("In New York, '[m]eals . . . provided by an employer to an employee may be considered

part of the wages paid to the employee but shall be valued at no more than . . . $2.50 per meal.'"

(quoting *Hernandez v. Jrpac Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *26 (S.D.N.Y. June 9,

2016))).  Accordingly, the Court dismisses Plaintiff's NYLL unlawful deduction claim for failure

to state a claim.

### vi.   NYLL whistleblower protection claims

Defendants argue that Plaintiff's "whistleblower claims fail because they do not arise

from disclosure of (or threat to disclose) a concern covered by the statutes."  (Defs.' Reply 10;

*see also* Defs.' Mem. 18.)

Plaintiff requests that the Court "deny Defendant[s'] [m]otion to [d]ismiss," (Pl.'s Opp'n

13), but does not respond directly to Defendants' whistleblower claims arguments.

## 1.  Section 740

Section 740 of the NYLL provides, in relevant part, that '[a]n employer shall not take any retaliatory personnel action against an employee because such employee . . . discloses . . . to a supervisor . . . an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety."  NYLL § 740(2)(a).  "The plain language of section 740 requires that, in order to state a cause of action, 'a plaintiff must allege facts supporting the conclusion that (1) he was subject to a retaliatory personnel action after (2) disclosing to a supervisor (3) a practice of the employer that is in violation of a law, rule, or regulation (4) that creates and presents a substantial and specific danger to the public health or safety.'"  *Arazi v. Cohen Bros. Realty Corp.*, No. 20-CV-8837, 2022 WL 912940, at *10 (S.D.N.Y. Mar. 28, 2022) (quoting *Klein v. Brookhaven Health Care Facility*, No. 17-CV-4841, 2019 WL 1459258, at *9 (E.D.N.Y. Mar. 11, 2019), *report and recommendation adopted*, 2019 WL 1458219 (E.D.N.Y. Mar. 31, 2019). Complaints alleging a violation of section 740 "need not plead an actual violation of laws or regulations to survive a motion to dismiss."  *Lawlor v. Wymbs, Inc.*, 182 N.Y.S.3d 61, 62 (App. Div. 2023).  However, to prevail against a motion to dismiss a "plaintiff must show 'a causal connection between the protected activity and the adverse employment action,'" *Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 582 (2d Cir. 2020) (quoting *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 472 (S.D.N.Y. 2013)), and "allege a specific danger to the public health or safety," *Rinaldi v. Mills*, No. 21-CV-2630, 2022 WL 17480081, at *2 (2d Cir. Dec. 7, 2022) (citing *Coyle v. Coll. of Westchester, Inc.*, 87 N.Y.S.3d 244 (App. Div. 2018)).

At the time Plaintiff initiated this action — March 25, 2021[11] — "[t]he applicable statute of limitations for [section 740] claims [was] one year." *Russell v. Aid to Developmentally Disabled, Inc.*, 753 F. App'x 9, 15 (2d Cir. 2018) (citing NYLL § 740(4)(a)); *see also Romero v. Floris Constr., Inc.*, No. 16-CV-4282, 2017 WL 5592681, at *7 (E.D.N.Y. Nov. 20, 2017) ("The statute of limitations for a Section 740 claim is one year from the alleged retaliatory action" (citing NYLL § 740(4))); *Geldzahler v. N.Y. Med. Coll.*, 746 F. Supp. 2d 618, 630 (S.D.N.Y. 2010) (same). While section 740 was amended in 2022, increasing the limitations period to two years, that change was not made retroactive. *Flaherty v. Dixon*, No. 22-CV-2642, 2023 WL 2051861, at *9 n.2 (S.D.N.Y. Feb. 16, 2023) ("There is no indication in the text of § 740 that New York's legislature intended to revive time-barred claims."). Thus, only allegedly retaliatory incidents which occurred within one year of Plaintiff commencing this case are actionable.

Plaintiff claims that she was fired by Defendants on August 29, 2019. (Am. Compl. ¶ 197.) Plaintiff does not allege any retaliatory conduct after that date, thus the statute of limitations for her section 740 claim expired on August 29, 2020. Plaintiff's section 740 claim was therefore untimely when she commenced this action on March 25, 2021. *See Flaherty*, 2023 WL 2051861, at *9 (declining to permit the filing of a section 740 claim following the expiration of the one-year statute of limitations); *Rubin v. N.Y.C. Bd. of Educ.*, No. 20-CV-10208, 2023 WL 1972729, at *20 (S.D.N.Y. Jan. 6, 2023) (recommending dismissal of time-barred section 740 claim), *report and recommendation adopted*, 2023 WL 2344731 (S.D.N.Y. Mar. 3, 2023). Accordingly, the Court dismisses Plaintiff's section 740 claim for failure to state a claim.

---

[11] "Section 740 was amended, signed into law in October 2021, and became effective January 26, 2022 . . . ." *Zhang v. Centene Mgmt. Co., LLC*, No. 21-CV-5313, 2023 WL 2969309, at *14 (E.D.N.Y. Feb. 2, 2023).

## 2.   Section 741

"[T]o state a claim under section 741 a plaintiff must [] plausibly allege a good faith, reasonable belief that the employer's actions actually created a substantial and specific danger to public health or safety or a significant threat to the health of a specific patient." *Underwood v. Roswell Park Cancer Inst.*, No. 15-CV-684, 2017 WL 131740, at *19 (W.D.N.Y. Jan. 13, 2017). However, a section 741 "complaint need not specify the actual law, rule or regulation violated, although it must identify the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the alleged conduct." *Von Maack v. Wyckoff Heights Med. Ctr.*, 37 N.Y.S.3d 126, 129 (App. Div. 2016).

Unlike section 740 claims, "[c]laims brought under section 741 . . . are subject to a two-year statute of limitations." *Zhou v. Roswell Park Cancer Inst. Corp.*, No. 19-CV-1200, 2021 WL 4272286, at *3 (W.D.N.Y. Sept. 21, 2021); *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 132 (2d Cir. 2007) ("[T]he limitations period applicable to a claim brought under section 741 is two years.") (citing NYLL § 740(4)(d)).  Section 740 affords a health care "employee," as defined in the statute, a cause of action against the employer for "retaliatory action" taken because the employee does any of the following:

> (a) discloses or threatens to disclose to a supervisor, or to a public body an activity, policy or practice of the employer or agent that the employee, in good faith, reasonably believes constitutes improper quality of patient care; or
>
> (b) objects to, or refuses to participate in any activity, policy or practice of the employer or agent that the employee, in good faith, reasonably believes constitutes improper quality of patient care.

NYLL § 741(2)(a)–(b); *see Reddington v. Staten Island Univ. Hosp.*, 543 F.3d 91, 93–94 (2d Cir. 2008) (holding that section 741 applies to "employees who actually supply health care services," but not those who "merely coordinate with those who do" (quoting *Reddington v. Staten Island*

*Univ. Hosp.*, 11 N.Y.3d 80, 91, (2008))).  The Health Care Whistleblower Law contemplates

enforcement through the private right of action established in New York's general Whistleblower

Law, Labor Law § 740.  *See Reddington*, 11 N.Y.3d at 88 (discussing the "uniquely

interconnected elements of sections 740 and 741; specifically, every section 741 claim expressly

relies on and incorporates section 740 for purposes of enforcement").

       Plaintiff has not adequately alleged a section 741 claim because she has not identified an

action by Defendants posing a significant threat to public health or safety which she reported and

was then subjected to retaliation.  Plaintiff claims that she "was subject to a retaliatory personnel

action after," (Am. Compl. ¶ 245), reporting the "disclosure of private patient information and

falsification of patient incident reports," (*id.* ¶ 246).  Plaintiff alleges that Silver Lake employees'

use of EMR software on personal computers was "in stark violation of HIPAA privacy rules,"

(*id.* ¶ 114), and the disclosure of EMR information "create[d] and present[ed] a substantial and

specific danger to the public health or safety," (*id.* ¶ 116).  However, Plaintiff does not identify

what danger, if any, was caused by the alleged violations.  Her failure to do so is fatal to her

claim.  *See Finch v. New York*, No. 10-CV-9691, 2012 WL 2866253, at *13 (S.D.N.Y. May 30,

2012) (dismissing section 741 claim alleging "wasteful spending, excessive ordering, and []

storage concerns" because it did not "relate to a substantial or specific danger to public health or

to a specific patient"); *Pipia v. Nassau Cnty.*, 826 N.Y.S.2d 318, 319–20 (App. Div. 2006)

(dismissing section 741 claim "alleg[ing] improper and corrupt purchasing practices" because

the conduct "did not pose a substantial and specific danger to the public health"); *see also Tomo

v. Episcopal Health Servs., Inc.*, 925 N.Y.S.2d 563, 566 (App. Div. 2011) (holding that practices

"related to the privacy of confidential information" could not "satisfy the element of a threat to

public health and safety, and, thus, cannot sustain a cause of action alleging a violation of Labor

Law § 740").  Accordingly, the Court dismisses Plaintiff's section 741 claim for failure to state a

claim.

> ### d.   Section 1981, NYSHRL, and NYCHRL claims

Defendants argue that Plaintiff's section 1981 claims are defective because Plaintiff did

not allege that her Russian ancestry was the "but for" cause of any adverse employment actions

taken by Defendants.  (Defs.' Mem. 15; Defs.' Reply 9.)  They contend that Plaintiff "fail[ed] to

connect" their alleged negative comments about her Russian ancestry to adverse employment

decisions.  (Defs.' Mem. 15.)  In addition, Defendants claim that Plaintiff's section 1981

retaliation claim should be dismissed because Plaintiff did not "plead that adverse action was

taken as a result of complaints concerning treatment due to the fact that she is Russian."  (*Id.*)

Defendants also argue that Plaintiff's NYSHRL and NYCHRL "discrimination and retaliation

claims fail because she fails to allege that she was treated 'less well, at least in part for a

discriminatory reason,' or any causal connection between a complaint and adverse action."

(Defs.' Reply 10.)

Plaintiff argues that her Amended Complaint sufficiently "detail[s] Defendants'

discriminatory animus" with respect to her ethnicity and ancestry.  (Pl.'s Opp'n 12.)  Plaintiff

also claims that it was that animus which "played a role in Silver Lake's follow through of its

retaliatory and discriminatory treatment of Plaintiff when she complained and opposed Silver

Lake's unlawful conduct in and or around the termination of her employment."  (*Id.*)

> ### i.   Section 1981 discrimination claims

Section 1981 "provide[s] a cause of action for [the] deprivation of contract . . . rights."

*Carrero v. NYCHA*, 890 F.2d 569, 575 (2d Cir. 1989).  Pursuant to section 1981, "[a]ll persons

within the jurisdiction of the United States shall have the same right . . . to make and enforce

contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and

proceedings for the security of persons and property as is enjoyed by white citizens."  42 U.S.C.

§ 1981.  This provision "forbid[s] 'racial' discrimination in public or private employment,"

which "include[s] discrimination based on 'ancestry or ethnic characteristics.'"  *Vill. of Freeport*

*v. Barrella*, 814 F.3d 594, 604 (2d Cir. 2016) (quoting *Saint Francis Coll. v. Al-Khazraji*, 481

U.S. 604, 613 (1987)); *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) (same).  Section

1981's proscription of discrimination does not extend to "discrimination based 'solely on the

place or nation of the plaintiff's origin.'"  *Nadesan v. Citizens Fin. Grp.*, 673 F. App'x 47, 49 (2d

Cir. 2016) (citing *Al-Khazraji*, 481 U.S. at 613 (brackets omitted)); *see also Ghose v. Century

21, Inc.*, 12 F. App'x 52, 55 (2d Cir. 2001) ("42 U.S.C. § 1981 does not prohibit discrimination

on the basis of national origin."); *Zemsky v. City of N.Y.*, 821 F.2d 148, 150 (2d Cir. 1987) ("A

plaintiff states a viable cause of action under Section 1981 . . . only by alleging a deprivation of

his rights on account of his race, ancestry, or ethnic characteristics.").

  To state a claim under section 1981, a plaintiff must allege that (1) she is a member of a

racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the

discrimination concerned one or more of the activities enumerated in the statute.  *See Felder v.

United States Tennis Ass'n*, 27 F.4th 834, 848 (2d Cir. 2022) (quoting *Brown v. City of Oneonta*,

221 F.3d 329, 339 (2d Cir. 2000)); *Gatling v. West*, 850 F. App'x 91, 96 (2d Cir. 2021) (same);

*DuBois v. Bedford-Flatbush Chiropractic, P.C.*, 409 F. Supp. 3d 62, 68 (E.D.N.Y. 2019) (same).

Direct evidence of discriminatory intent is not required to satisfy the second element of

a section 1981 claim, as a plaintiff may instead rely on circumstantial evidence that supports an

inference of discrimination.  *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001) (stating,

in context of reviewing grant of summary judgment dismissing section 1981 claims brought by

restaurant patrons, that "direct evidence of discrimination is not necessary" because discrimination claims may be based on "sufficient circumstantial evidence").

At the motion to dismiss stage, a plaintiff must "specifically allege the 'circumstances giving rise to a plausible inference of racially discriminatory intent.'" *Bentley, Jr. v. Mobil Gas Station*, 599 F. App'x 395, 396 (2d Cir. 2015) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994)); *see also Brannon v. Delta Airlines, Inc.*, 434 F. Supp. 3d 124, 133 (S.D.N.Y. 2020) (same). "A plaintiff's naked allegation that the defendant acted based on the plaintiff's race and color is too conclusory to survive a motion to dismiss." *Bentley, Jr.*, 599 F. App'x at 396 (citing *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (en banc)). "The plaintiff bears the burden throughout an entire Section 1981 lawsuit to 'prove that, but for race, [they] would not have suffered the loss of a legally protected right.'" *Gatling*, 850 F. App'x at 97 (quoting *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media,* 140 S. Ct. 1009, 1019 (2020)).

Plaintiff pleads that she is Jewish and of Russian ancestry, therefore there is no dispute that Plaintiff is a member of a class entitled to the statute's protection. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 503 (6th Cir. 2001) ("[O]ne can state a cognizable § 1981 claim if he can allege discrimination based on any of a number of ethnicities, including: German, Italian, Spanish, Russian, and 'Arab,' to name just a few." (citing *Saint Francis Coll.*, 481 U.S. at 611–13)).

Plaintiff has also sufficiently alleged that Defendants intended to discriminate against her on the basis of her Russian and Jewish identity based on her allegation that Defendants made "intentionally discriminatory comments about [her] Russian ethnicity and ancestry, and her Jewish ethnicity based upon the fact that she was not as observant as her bosses." (Am. Compl. ¶ 9.) Michael Kraus commented that she displayed the "manners of Russia," *(id.* ¶ 78), and

called her "an embarrassment to Jews," (*id.* ¶ 80).  These comments are sufficient to raise an

inference of discrimination.  *See Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir. 1987)

(finding an inference of discrimination where plaintiff's supervisor was "excessively critical of

him because of his ethnic background"); *Boex v. OFS Fitel, LLC*, 339 F. Supp. 2d 1352, 1362

(N.D. Ga. 2004) (finding that a supervisor's "statements concerning Russians and Jews are

sufficient to raise an inference of discrimination").

Plaintiff also claims that her superiors' derogatory comments about her Russian and

Jewish identity occurred at a "meeting on or around the date of her termination."  (Am. Compl. ¶

184).  At that meeting, (1) "senior level Silver Lake executives" remarked upon Plaintiff's

Russian ancestry, (*id.* ¶ 185), and Weingarten instructed the attendees to "put all biases aside

because Alexandra is Jewish or Russian," (*id.* ¶ 189).  These comments sufficiently link

Defendants' discriminatory animus to Plaintiff's termination.  *See Meilus v. Rest. Opportunities

Ctr. United, Inc.*, No. 21-CV-2554, 2021 WL 4868557, at *8–9 (S.D.N.Y. Oct. 2021) (denying a

motion to dismiss a section 1981 claim where the complaint "enumerate[d] a series of behaviors

by [d]efendants that plausibly suggest[ed] [plaintiff] was discriminated against on the basis of

her race").[12]

---

[12]  While not restated in the individual counts detailing the allegations of her section 1981
claims, Plaintiff asserts section 1981 claims on the basis of religion and national origin in
paragraph fifteen of the Amended Complaint.  (Am. Compl. ¶ 15).  However, "section 1981 does
not prohibit discrimination on the basis of . . . religion [or] national origin."  *Anderson v.
Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) (first citing *Runyon v. McCrary*, 427 U.S. 160, 167
(1976); and then citing *Saint Francis Coll.*, 481 U.S. at 613); *see also Vill. of Freeport v.
Barrella*, 814 F.3d 594, 606 (2d Cir. 2016) ("Section 1981 prohibits discrimination on the basis
of race but not on the basis of national origin." (citing *Anderson*, 156 F.3d at 170)); *Kampfer v.
Buchanan*, No. 10-CV-1234, 2011 WL 691647, at *2 (N.D.N.Y. Feb. 18, 2011) ("[W]hile the
Second Circuit has held that discrimination based on alienage is [] prohibited by section 1981,
discrimination based on gender, religion, national origin, or age is not." (citing *Anderson*, 156

ii. **Hostile work environment claims**

Plaintiff claims that Defendants subjected her to a hostile work environment in violation of section 1981, (Am. Compl. ¶¶ 251, 260), the NYSHRL, (*id.* ¶¶ 311–321), and the NYCHRL, (*id.* ¶ 322–332).

To state a hostile work environment claim under section 1981 and the NYSHRL prior to its amendment,[13] a plaintiff must "show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Shultz v. Congregation Shearith Israel*, 867 F.3d 298, 309 (2d Cir. 2017) (quoting *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014)); *see Duplan v. City of N.Y.*, 888 F.3d 612, 627 (2d Cir. 2018) (same). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive."

---

F.3d at 170)). Accordingly, the Court dismisses Plaintiff's section 1981 claims on the basis of religion and national origin for failure to state a claim.

[13] Historically, discrimination claims under the NYSHRL were "largely subject to the same analysis [courts] apply under Title VII." *Reyes v. Westchester Cnty. Health Care Corp.*, No. 21-CV-0410, 2021 WL 4944285, at *2 (2d Cir. Oct. 25, 2021) (citing *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014)). However, "the NYSHRL was amended in 2019 to 'be construed liberally for the accomplishment of the remedial purpose thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed.'" *Cooper v. Franklin Templeton Invs.*, No. 22-CV-2763, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023) (quoting N.Y. Exec. Law § 300). While the Second Circuit has not yet "resolve[d] the impact of these amendments," *id.*, the amendments only apply to claims that accrued after October 11, 2019, *see Wellner v. Montefiore Medical Center.*, No. 17-CV-3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019). The amendments therefore do not apply to Plaintiff's claims, which accrued on or around July and August of 2019. *See Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 343 (S.D.N.Y. 2021) ("A cause of action for discrimination under the NYSHRL accrues and the limitation period begins to run on the date of the alleged discriminatory act." (quotations and alterations omitted)).

*Littlejohn v. City of N.Y.*, 795 F.3d 297, 321 (2d Cir. 2015) (quoting *Raspardo v. Carlone*, 770

F.3d 97, 114 (2d Cir. 2014)).  "A hostile work environment is shown when 'a single incident was

extraordinarily severe, or [] a series of incidents were sufficiently continuous and concerted' to

be deemed 'pervasive.'"  *Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 69 (2d Cir. 2023) (quoting

*Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).  "[S]poradic teasing and offhand

comments" are generally insufficient to meet this threshold.  *Sosa v. N.Y.C. Dep't of Educ.*, 819

F. App'x 30, 35 (2d Cir. 2020).  A plaintiff must also show "that the complained of conduct . . .

creates such an environment because of the plaintiff's" protected characteristic.  *LeGrand v.*

*Walmart Stores E., LP*, 779 F. App'x 779, 782 (2d Cir. 2019).  In evaluating whether a plaintiff

states a hostile work environment claim, the court must consider facially neutral conduct that

might "bolster a harassment claim" when the facially neutral conduct is by the same individual

who engaged in "overt[]" discrimination.  *See Daniel v. T&M Prot. Res., LLC*, 689 F. App'x 1, 3

(2d Cir. 2017) (citing *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547–48 (2d Cir. 2010))

(remanding with instructions to the district court to consider facially neutral incidents of

harassment in analyzing the plaintiff's hostile work environment claim).

   "A plaintiff alleging a hostile work environment has a lower burden under city law than

under its federal or state counterparts."  *Williams*, 2023 WL 2171483, at *8.  "[U]nder the

NYCHRL, the alleged hostile conduct need not be severe or pervasive."  *Boonmalert v. City of*

*N.Y.*, 721 F. App'x 29, 34 (2d Cir. 2018) (citing *Mihalik v. Credit Agricole Cheuvreux N. Am.,*

*Inc.*, 715 F.3d 102, 113 (2d Cir. 2013)).  "[A] plaintiff claiming a hostile work environment

[under the NYCHRL] need only demonstrate that he or she was treated 'less well than other

employees' because of the relevant characteristic."  *Reichman v. City of N.Y.*, 117 N.Y.S.3d 280,

284 (App. Div. 2020) (quoting *Torres v. New York*, No. 18-CV-36444, 2019 WL 1765223, at *5 (S.D.N.Y. Apr. 22, 2019)).

### 1.    Section 1981 and NYSHRL claims

Plaintiff has plausibly alleged section 1981 and NYSHRL hostile work environment claims.  Plaintiff generally claims that she "endured a verifiable tale of egregious and unlawful hostile work environment on account of her national origin and religion during her final months at Silver Lake," (Am. Compl. ¶ 91), and that her bosses made "intentionally discriminatory comments about [her] Russian ethnicity and ancestry and her Jewish ethnicity based upon the fact that she was not as observant as her bosses," (*id.* ¶ 9).  However, Plaintiff also specifically alleges that Torricelli berated her in front of her colleagues, (*id.* ¶ 123–131), and supervisors, (*id.* ¶ 184); Michael Kraus made remarks about "a formal method of communication in this country," (*id.* ¶ 163), and complained about Plaintiff's "'whining' about Shabbos,'" (*id.* ¶ 193), and that she was "the worst example of a Jew," (*id.* ¶ 195); Silver Lake executives discussed "how they would have never hired [her] because she is from 'Russia,'" (*id.* ¶ 185); and Weingarten admonished fellow executives in a meeting near the date of Plaintiff's firing to "put all biases aside because Alexandra is Jewish or Russian," (*id.* ¶ 189).  These comments are sufficient to state a hostile workplace claim under section 1981.  *See, e.g.*, *Nagaraj v. Sandata Techs., LLC*, No. 18-CV-4748, 2020 WL 7249338, at *5 (E.D.N.Y. June 16, 2020) (denying a motion to dismiss a section 1981 hostile work environment claim where plaintiff's supervisor was "calling him derogatory names and ridiculing the way he speaks"), *report and recommendation adopted*, No. 18-CV-4748, 2020 WL 6482194 (E.D.N.Y. Nov. 4, 2020); *see also Jaffery v. Downtown Pharmacy, Inc.*, No. 20-CV-3437, 2021 WL 1199074, at *3 (S.D.N.Y. Mar. 30, 2021) (denying a motion to dismiss with respect to a section 1981 hostile work environment claim where plaintiff

36

alleged that defendants "made repeated comments directed at her race and ethnicity"). Because Plaintiff's allegations are sufficient to state a section 1981 hostile work environment claim, Plaintiff's allegations are also sufficient to state a NYSHRL hostile work environment claim. *See Love v. Premier Util. Servs.*, 186 F. Supp. 3d 248, 256 (S.D.N.Y. 2016) (holding "that the complaint states a plausible claim for a racially hostile work environment under the NYSHRL" because "[h]ostile work environment claims under the NYSHRL are analytically identical to such claims under § 1981").

### 2. NYCHRL claim

Plaintiff has also plausibly alleged hostile work environment claims under the NYCHRL. Because Plaintiff's allegations in the Amended Complaint are sufficient to state a hostile work environment claim under the more stringent section 1981 and NYSHRL standards, Plaintiff's allegations also sufficiently state a NYCHRL claim. *See Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21-CV-2512, 2022 WL 524551, at *10 (S.D.N.Y. Feb. 22, 2022) (denying a motion to dismiss a NYCHRL hostile work environment claim because plaintiff adequately pled section 1981 and NYSHRL hostile work environment claims).

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's section 1981, NYSHRL, and NYCHRL hostile work environment claims.

### iii. Retaliation claims

Plaintiff claims that Defendants retaliated against her in violation of section 1981, (Am. Compl. ¶¶ 258–266), the NYSHRL, (*id.* ¶¶ 361–363), and the NYCHRL, (*id.* ¶ 364–366).

Retaliation claims under section 1981 and the NYSHRL are analyzed using the same standards, *Alvarado v. Nordstrom, Inc.*, 685 F. App'x 4, 7 (2d Cir. 2017) (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)), while NYCHRL retaliation claims are "subject to different

and more liberal standards than [] federal or NYSHRL retaliation claims," *Lucio v. N.Y.C. Dept. of Educ.*, 575 F. App'x 3, n.2 (2d Cir. 2014) (citing *Mihalik*, 715 F.3d at 109); *see also Isbell v. City of N.Y.*, 316 F. Supp. 3d 571, 593 (S.D.N.Y. 2018) (noting that "[r]etaliation claims brought under the NYCHRL are . . . subject to a lower standard" than section 1981 and NYSHRL retaliation claims).  To establish a prima facie case of retaliation for section 1981 and NYSHRL claims, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316 (quoting *Hicks*, 593 F.3d at 164).  At the pleading stage, the allegations need only give "plausible support to the reduced prima facie requirements." *Id.*  "[F]or a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) [the] defendants discriminated — or took an adverse employment action — against [her], (2) because [s]he has opposed any unlawful employment practice." *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 271 (2d Cir. 2016) (second two alterations in original) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015)).  Adverse employment actions are actions that "could well have dissuaded a reasonable employee in [the plaintiff's] position from complaining of unlawful discrimination." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 44 (2d Cir. 2019) (first quoting *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 209 (2d Cir. 2006); and then citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).  To sufficiently plead that a defendant-employer took an adverse employment action "because" a plaintiff opposed an unlawful employment practice, a plaintiff "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).  But-for causation does not require that

retaliation "was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91 (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)); *Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 497 (E.D.N.Y. 2016) (same)).  A causal connection of retaliation can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).  "[T]he requirement that [the plaintiff] show a causal connection between his complaints and his termination is satisfied by the temporal proximity between the two." *Feingold v. New York*, 366 F.3d 138, 156–57 (2d Cir. 2004).

"[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that [they] took an action opposing [their] employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Leroy v. Delta Air Lines, Inc.*, 36 F.4th 469, 474 (2d Cir. 2022) (quoting *Mihalik*, 715 F.3d at 112).  "To survive a motion to dismiss, a plaintiff claiming retaliation under the NYCHRL must allege that she engaged in protected activity." *Id.* (citing *Albunio v. City of N.Y.*, 16 N.Y.3d 472, 479 (2011)).  The plaintiff "need not prove that her underlying complaint of discrimination had merit but only that it was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful." *Zann Kwan*, 737 F.3d at 843.

1.   **Section 1981 and NYSHRL claims**

Plaintiff has sufficiently alleged a prima facie retaliation claim under section 1981 and the NYSHRL.  Plaintiff sufficiently alleges that she engaged in protected activities.  Specifically, Plaintiff claims that she was the subject of "discrimination with respect to [her] national origin / ancestry (i.e. Russian), and religion (becoming a more observant Jew)," (Am. Compl. ¶ 98), and she "tried to discuss her concerns of continuing harassment with her managers — both Michael Kraus[] and Simone Krause — but her complaints were ignored, and oftentimes scoffed at," (*id.* ¶ 99).  In addition, in a July 20, 2019 email, Plaintiff complained that "Torricelli ha[d] been creating a very hostile environment," and had regularly denied her "request[s] to leave early on Fridays due to Shabbat observance."  (*Id.* ¶ 101.)  On July 22, 2019, Plaintiff requested "assurance from management that the hostility [Torricelli] is creating towards me will cease." (*Id.* ¶ 108.)  These complaints were sufficient to put Defendants on notice that Plaintiff was engaged in protected activity.  Defendants responded to Plaintiff's July 20, 2019 email, demonstrating that they were aware that Plaintiff engaged in protected activity.  (*See id.* ¶¶ 103, 105.)  Further, Plaintiff has also sufficiently alleged that her suspension and termination were adverse employment actions resulting from her engaging in her protected activity.  (*Id.* ¶ 111 ("From the moment Alexandra sent her July 20th email complaint, she was scrutinized, picked upon, and construed . . . in the worst possible light in an attempt to either force Alexandra to quit or create a pretext to terminate her employment . . . .").)  Moreover, the proximity among Plaintiff's protected activity on July 20, 2019, subsequent suspension on July 25, 2019, and termination on August 29, 2019 is sufficient at this preliminary stage to infer a causal connection between Plaintiff's protected activity and the adverse employment action.  *See Cadet v. All. Nursing Staffing of N.Y., Inc.*, 632 F. Supp. 3d 202, 223–24 (S.D.N.Y. 2022) (citing the

"temporal proximity" between the plaintiff's complaint and the adverse employment action as grounds for denying a motion to dismiss); *Ofoedu v. St. Francis Hosp. & Med. Ctr.*, No. 4-CV-1707, 2006 WL 8446750, at *2 n.4 (D. Conn. Nov. 6, 2006) (finding, "based solely on temporal proximity — that there is a causal connection between the protected activity and the adverse employment action").

### 2.   NYCHRL claim

Because Plaintiff's allegations in the Amended Complaint are sufficient to state retaliation claims under section 1981 and the NYSHRL, they are also sufficient to state a NYCHRL retaliation claim.  *See Colon v. Mark-Viverito*, No. 16-CV-4540, 2018 WL 1565635, at *6 (E.D.N.Y. Mar. 26, 2018) (denying motion to dismiss NYCHRL retaliation claim on the basis that the court "already found that [p]laintiff satisfies the more stringent standard applied to retaliation claims brought under . . . the NYSHRL").  The Court therefore denies Defendants' motion to dismiss with respect to Plaintiff's NYCHRL retaliation claim.

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's section 1981, NYSHRL, and NYCHRL retaliation claims.

### e.   Plaintiff's remaining NYSHRL and NYCHRL claims

Plaintiff claims that Defendants discriminated against her on the basis of (1) religion in violation of the NYSHRL, (*id.* ¶¶ 267–277), and the NYCHRL, (*id.* ¶¶ 278–288); and (2) national origin in violation of the NYSHRL, (*id.* ¶¶ 289–299), and the NYCHRL, (*id.* ¶¶ 300–310).  Plaintiff also brings aiding and abetting claims against Torricelli and Kraus pursuant to the NYSHRL, (*id.* ¶¶ 333–339, 347–353), and the NYCHRL, (*id.* ¶¶ 340–346, 354–360).

Discrimination claims under the NYSHRL are assessed using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973).  *See Vega*, 801 F.3d at 82–83; *see also Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016); *Littlejohn*, 795 F.3d at 307–08.  Under that framework "a plaintiff must first establish a prima facie case of discrimination by showing that: '(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'" *Vega*, 801 F.3d at 83 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)).  At the pleading stage, however, a plaintiff need not prove discrimination or even allege facts establishing every element of the *McDonnell Douglas* prima facie case.  *Littlejohn*, 795 F.3d at 311; *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) ("[T]he requirements for establishing a prima facie case under *McDonnell Douglas* [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." (second alteration in original) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002))).  Instead, a plaintiff need only plead facts sufficient to give "plausible support" to the plaintiff's "minimal" initial burden, which is governed by the statute under which she brings her claims.  *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 307, 312); *see also Javed v. Medgar Evers Coll. of City Univ. of N.Y.*, 724 F. App'x 73, 74 (2d Cir. 2018) (citation omitted).  The allegations must "put forward 'at least minimal support for the proposition'" that the adverse employment action was "motivated by [the employer's] discriminatory intent."  *Javed*, 724 F. App'x at 74 (quoting *Vega*, 801 F.3d at 85); *see also Vega*, 801 F.3d at 87 ("[A] plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his [protected characteristic] was a motivating factor in the employment decision.").

To establish a claim under the NYCHRL, the plaintiff must show that the employer treated her "less well, at least in part for a discriminatory reason."  *Mihalik*, 715 F.3d at 110 n.8;

42

*Harris*, 2022 WL 3100663, at *8 ("To count as being treated 'less well,' a plaintiff must merely plausibly allege 'differential treatment that is more than trivial, insubstantial, or petty.'" (quoting *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 285 (S.D.N.Y. 2020))). Even under this more forgiving pleading standard, a plaintiff must still plausibly allege that he was treated less well "at least in part '*because* of [his] [belonging to a protected class].'" *Mihalik*, 715 F.3d at 110 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39, 40 n.27 (App. Div. 2009)).

### i.  Religious discrimination claims

"NYSHRL and NYCHRL prohibit employment discrimination on the basis of religion." *Reichman*, 117 N.Y.S.3d at 284. To state a claim for religious discrimination under the NYSHRL, a plaintiff "must establish that (1) he or she is a member of a protected class, (2) he or she was qualified to hold the position, (3) he or she suffered an adverse employment action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.'" *Id.* (first citing *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 305 (2004); then citing *Furfero v. St. John's Univ.*, 941 N.Y.S.2d 639 (App. Div. 2012)); *Messinger v. Girl Scouts of the U.S.A.*, 792 N.Y.S.2d 56, 57 (App. Div. 2005) (same). "To state a claim under the NYCHRL, 'the plaintiff need only show differential treatment — that she is treated 'less well' — because of a discriminatory intent.'" *Szewcyk v. Saakian*, 774 F. App'x 37, 38 (2d Cir. 2019) (quoting *Mihalik*, 715 F.3d at 110 (2d Cir. 2013)); *Gerzhgorin v. Selfhelp Cmty. Servs., Inc.*, No. 22-CV-808, 2023 WL 2469824, at *3 (2d Cir. Mar. 13, 2023) (same). "Verbal comments can serve as evidence of discriminatory motivation when a plaintiff shows a nexus between the discriminatory remarks and the employment action at issue." *Chiara v. Town of New Castle*, 2 N.Y.S.3d 132, 142 (App. Div. 2015). However, these comments "must be beyond what is considered petty slights and trivial inconveniences." *Salemi v. Gloria's Tribeca Inc.*, 982

N.Y.S.2d 458, 460 (App. Div. 2014).

Plaintiff has sufficiently pled religious discrimination claims pursuant to the NYSHRL and the NYCHRL.  Plaintiff claims that her supervisors made "intentionally discriminatory comments about . . . her Jewish ethnicity based upon the fact that she was not as observant as her bosses." (Am. Compl. ¶ 9.)  According to Plaintiff, she was called "an embarrassment to Jews" and "the worst example of a Jew," (*id.* ¶ 80), before being fired "as a direct result of [her] religion," (*id.* ¶ 268).  These comments are sufficient to support her claims at this stage.  *See Demir v. Sandoz Inc.*, 65 N.Y.S.3d 9, 12 (App. Div. 2017) (finding facts "giving rise to an inference of discrimination" where plaintiff alleged that she "had been subjected to abusive and derogatory remarks and questions about her . . . religious practices"); *Chiara*, 2 N.Y.S.3d at 142 (finding that a supervisor's "various anti-Semitic remarks in the plaintiff's presence" could permit a trier of fact to "determine that there was a causal connection between the supervisors' discriminatory comments" and plaintiff's firing).  Accordingly, the Court denies Defendants' motion to dismiss with respect to Plaintiff's NYSHRL and NYCHRL religious discrimination claims.[14]

---

[14]  Under the heading of her "Discrimination on the Basis of Religion Under NYCHRL" claim, Plaintiff references "actions taken because of [her] sex." (Am. Compl. ¶ 285.)  Plaintiff also alleges — under the heading of her "Discrimination on the Basis of National Origin Under NYSHRL" claim — that "similarly situated male employees were treated differently than [her] in respect to of [sic] her terms, conditions, and privileges of employment," (*id.* ¶ 291), and references "Defendant's aforementioned sex discrimination against [her]," (*id.* ¶ 294).  "The NYSHRL prohibits employers from discriminating against an individual 'because of . . . sex . . . in compensation or in terms, conditions or privileges of employment.'" *Hoit v. Cap. Dist. Transp. Auth.*, 805 F. App'x 41, 44 (2d Cir. 2020).  However, beyond these three stray references, Plaintiff does not present any facts in the Amended Complaint of Plaintiff's sex or sexual orientation and any discrimination which Plaintiff may have experienced on account of these characteristics.  Accordingly, to the extent that one is made, the Court dismisses Plaintiff's NYSHRL sex discrimination claim for failure to state a claim.  If Plaintiff intended to assert a claim based on sex discrimination Plaintiff must allege facts to support such a claim in any amended complaint.

ii.   **National origin discrimination**

The NYSHRL "precludes discrimination in employment on the basis of . . . national origin." *Freudenthal v. Cnty. of Nassau*, 755 N.Y.S.2d 56, 59 (2003).  "To defeat a motion to dismiss, 'a plaintiff must plausibly allege that (1) the employer took adverse action against [her], and (2) [her] . . . national origin was a motivating factor in the employment decision.'" *Reyes v. Westchester Cnty. Health Care Corp.*, No. 21-CV-0410, 2021 WL 4944285, at *2 (2d Cir. Oct. 25, 2021) (quoting *Vega*, 801 F.3d at 87); *Cruz v. SEIU Loc. 32BJ*, No. 19-CV-11836, 2021 WL 3604661, at *5 (S.D.N.Y. Aug. 12, 2021) (same).  The NYCHRL similarly prohibits employment discrimination on the basis of national origin.  *Persaud v. Walgreens Co.*, 76 N.Y.S.3d 613, 614 (App. Div. 2018).  In addition, for purposes of the NYCHRL, discrimination against individuals with "limited English proficiency . . . constitutes discrimination based on national origin." *Boureima v. N.Y.C. Hum. Res. Admin.*, 10 N.Y.S.3d 199, 201 (App. Div. 2015); *St. Jean Jeudy v. City of N.Y.*, 37 N.Y.S.3d 498, 501 (App. Div. 2016) ("[D]isparate treatment on the basis of a foreign accent is evidence of discrimination based on race or national origin."). "To state a claim for employment discrimination under NYCHRL, a complaint must allege that an employer treated an employee 'less well than other similarly situated employees, at least to some degree for discriminatory reasons.'" *Cruz*, 2021 WL 3604661, at *5 (quoting *Brown v. Montefiore Med. Ctr.*, No. 19-CV-11474, 2021 WL 1163797, at *7 (S.D.N.Y. Mar. 25, 2021)); *see also Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014) ("To state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive; the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct." (internal quotation marks omitted)).

45

Plaintiff sufficiently pleads national origin discrimination claims pursuant to the NYSHRL and the NYCHRL.  Plaintiff alleges that she was fired by Defendants "as a direct result of [her] national origin."  (Am. Compl. ¶ 290.)  In addition, based on the proximity between Defendants' firing of Plaintiff and the meeting where a Silver Lake executive remarked that "they would have never hired Alexandra because she is from 'Russia,'" (*id.* ¶ 185), and Weingarten then told Torricelli to "put all biases aside because Alexandra is Jewish or Russian," (*id.* ¶ 189), Plaintiff has sufficiently alleged that, in firing her, Defendants were motivated, at least in part, by her national origin.  *See Mikolaenko v. N.Y. Univ.*, No. 16-CV-413, 2017 WL 4174928, at *10 (S.D.N.Y. Sept. 7, 2017) (declining to dismiss NYCHRL national origin discrimination claim where Plaintiff alleged that she was "treated [] differently from other employees because she is Russian").  Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's NYSHRL and NYCHRL national origin discrimination claims.

### iii.   Aiding and abetting claims against Kraus and Torricelli

The NYSHRL and NYCHRL both provide for individual liability under an aiding-and-abetting theory.  *See Tolbert v. Smith*, 790 F.3d 427, 434 n.3 (2d Cir. 2015) ("The NYSHRL provides for individual liability under an aiding-and-abetting theory."); *Milord-Francois v. N.Y. State Off. of Medicaid Inspector Gen.*, No. 20-CV-3646, 2022 WL 480477, at *2 n.3 (2d Cir. Feb. 17, 2022) (same); *Sanderson-Burgess v. City of N.Y.*, 102 N.Y.S.3d 1233, 1234 (App. Div. 2019) ("The NYCHRL prohibits discrimination in employment . . . and prohibits aiding and abetting discrimination."); *Ananiadis v. Mediterranean Gyros Prods., Inc.*, 54 N.Y.S.3d 155, 159 (App. Div. 2017) ("An employee who did not participate in the primary violation itself, but who aided and abetted that conduct, may be individually liable based on those actions under both the NYSHRL and the NYCHRL.").  In order for a defendant to be held liable as an aider and abettor

46

under N.Y. Exec. Law § 296(6) and N.Y.C. Admin Code § 8-107(6), a plaintiff must first

establish the existence of a primary violation of the NYSHRL or NYCHRL by an employer or

principal.  *See Forrest*, 3 N.Y.3d at 313; *Kelly G. v. Bd. of Educ. of City of Yonkers*, 952

N.Y.S.2d 229, 232 (App. Div. 2012); *Strauss v. N.Y. State Dep't of Educ.*, 805 N.Y.S.2d 704,

709 (App. Div. 2005); *Baldwin v. Bank of Am., N.A.*, 984 N.Y.S.2d 630 (Sup. Ct. 2013); *see also*

*Benson v. Otis Elevator Co.*, 557 F. App'x 74, 77 (2d Cir. 2014); *Falbaum v. Pomerantz*, 19 F.

App'x 10, 15 (2d Cir. 2001); *Day v. MTA N.Y.C. Trans. Auth.*, No. 17-CV-7270, 2021 WL

4481155, at *14 (S.D.N.Y. Sept. 30, 2021) ("[L]iability must first be established as to the

employer/principal before accessorial liability can be found as to an alleged aider and abettor."

(alteration in original) (quoting *Jain v. McGraw-Hill Cos., Inc.*, 827 F. Supp. 2d 272, 277

(S.D.N.Y. 2011))); *Mereigh v. N.Y. & Presbyterian Hosp.*, No. 16-CV-5583, 2017 WL 5195236,

at *7 n.11 (S.D.N.Y. Nov. 9, 2017); *Irons v. Bedford–Stuyvesant Cmty. Legal Servs.*, No. 13-CV-

4467, 2015 WL 5692860, at *32 (E.D.N.Y. Sept. 28, 2015); *White v. Pacifica Found.*, 973 F.

Supp. 2d 363, 378 (S.D.N.Y. 2013).  "When evaluating aiding and abetting claims under the

NYSHRL, the same standards apply to claims under the NYCHRL because 'the language of the

two is virtually identical.'"  *Williams*, 2023 WL 2171483, at *14.  "[A]n individual defendant

may be held liable under the aiding and abetting provision of the NYSHRL if he actually

participates in the conduct giving rise to a discrimination claim."  *Francis v. Kings Park Manor,*

*Inc.*, 992 F.3d 67, 80 (2d Cir. 2021) (quoting *Rojas v. Roman Cath. Diocese of Rochester*, 660

F.3d 98, 107 n.10 (2d Cir. 2011)).

### 1.   Kraus

Plaintiff has adequately pled aiding and abetting claims against Kraus pursuant to the

NYSHRL and the NYCHRL.  Kraus is the "owner of Silver Lake" and has "authority to

undertake or recommend tangible employment decisions." (Am. Compl. ¶ 30.) Plaintiff alleges that Kraus called her "an embarrassment to Jews" and "the worst example of a Jew." (*Id.* ¶ 80.) Plaintiff also alleges that Kraus chided her about workplace interactions, stating that "calling is a formal method of communication in this country, although I cannot speak for the manners of Russia." (*Id.* ¶ 163.) Kraus's statements sufficiently establish Plaintiff's aiding and abetting claim against him with regard to her NYSHRL and NYCHRL hostile work environment, retaliation, and religious and national origin discrimination claims. *See Roenick v. Flood*, No. 20-CV-7213, 2021 WL 2355108, at *8 (S.D.N.Y. June 9, 2021) (declining to dismiss an aiding and abetting claim because "the [c]omplaint sufficiently allege[d]" a retaliation claim); *Morales v. N.Y. and Presbyterian Hosp.*, No. 18-CV-9711, 2019 WL 8989858, at *13 (S.D.N.Y. Nov. 20, 2019) (recommending denying motion to dismiss NYSHRL and NYCHRL aiding and abetting claims after recommending denial of motion to dismiss hostile work environment claim), *report and recommendation adopted*, 2020 WL 1150136 (S.D.N.Y. Mar. 10, 2020). Kraus's position as a decisionmaker at Silver Lake further supports Plaintiff's aiding and abetting claims against him with respect to these claims. *See Bueno v. Eurostars Hotel Co., S.L.*, No. 21-CV-535, 2022 WL 95026, at *9 (S.D.N.Y. Jan. 10, 2022) (denying a motion to dismiss NYSHRL and NYCHRL aiding and abetting claims because the defendant "was allegedly the main decisionmaker" in the plaintiff's allegedly discriminatory termination).

### 2.   Torricelli

Plaintiff has also sufficiently pled aiding and abetting claims against Torricelli. Plaintiff claims that Torricelli verbally abused her in reaction to her complaints about compliance issues which Torricelli overlooked, (Am. Compl. ¶ 98), and "create[d] a very hostile environment," through "curt comments and negative critique[s]," (*id.* ¶ 101). In addition, Plaintiff claims that

48

"Torricelli directly participated in the discriminatory conduct perpetrated against Plaintiff" by "suspen[ding] [] Plaintiff and terminati[ng] [] Plaintiff's employment because of her membership in a protected category."  (*Id.* ¶ 334.)  Indeed, Weingarten had to caution Torricelli to "put all biases aside because [Plaintiff] is Jewish or Russian" at a meeting on or around the day that Defendants fired Plaintiff.  (*Id.* ¶ 189.)  In view of Plaintiff's allegations that Torricelli was a direct participant in the discrimination which Plaintiff endured, the allegations are sufficient to establish aiding and abetting liability against Torricelli pursuant to the NYSHRL and NYCHRL. *See Torres v. N.Y. Methodist Hosp.*, No. 15-CV-1264, 2016 WL 3561705, at *13 (E.D.N.Y. Jan. 7, 2016) (finding that a defendant was "subject to aider and abetter liability under the NYCHRL and NYSHRL with respect to plaintiff's hostile work environment claim" because defendant "'actually participated' in the alleged discriminatory conduct that produced the alleged hostile work environment").

Accordingly, the Court denies Defendants' motion as to Plaintiff's aiding and abetting claims against Kraus and Torricelli.

### f. Plaintiff's civil assault, battery, and intentional infliction of emotional distress claims

Plaintiff claims that Defendants civilly assaulted, (Am. Compl. ¶¶ 367–370), and battered, (*id.* ¶¶ 371–373), her.  Plaintiff also brings an intentional infliction of emotional distress ("IIED") claim against Defendants.  (*Id.* ¶¶ 374–379.)

Defendants argue that all three claims are time barred because Plaintiff failed to file suit within one year of the time when her claims arose.  (Defs.' Mem. 19; Defs.' Reply 10.)

Plaintiff requests that the Court exercise supplemental jurisdiction over her state and municipal law claims, (Pl.'s Opp'n 12), but does not directly address Defendants' arguments with respect to why these claims are time-barred.

49

"[T]he statute of limitations on claims for damages arising from assault or battery in New York is one year." *Cohen v. Am. Airlines, Inc.*, 12 F.4th 240, 247 (2d Cir. 2021) (citing N.Y. C.P.L.R. § 215(3)); *Capak v. Epps*, No. 18-CV-4325, 2020 WL 2543092, at *4 (S.D.N.Y. Apr. 7, 2020) (same).

Intentional infliction of emotional distress ("IED") claims are subject to New York's "one-year statute of limitations for intentional torts." *Abdulaziz v. McKinsey & Co., Inc.*, No. 21-2921, 2022 WL 2444925, at *1 n.1 (2d Cir. July 5, 2022); *Berlin v. Jetblue Airways Corp.*, 436 F. Supp. 3d 550, 565 (E.D.N.Y. 2020) ("Under New York law, a one-year statute of limitations applies to . . . common law tort[s], [including] . . . intentional infliction of emotional distress." (citing N.Y. C.P.L.R. § 215)). "[T]he statute of limitations begins to run at the time of [a] defendant's 'last tortious act.'" *Austin v. Fordham Univ.*, No. 21-CV-6421, 2022 WL 4626485, at *10 (S.D.N.Y. Sept. 30, 2022) (quoting *De Santis v. City of N.Y.*, No. 10-CV-3508, 2013 WL 3388455, at *6 (S.D.N.Y. July 8, 2013)).

Plaintiff's civil assault and battery claims are untimely.  Plaintiff claims that on July 25, 2019, she was confronted by "three Silver Lake personnel" before being "menacingly surrounded" and "physically assaulted."  (Am. Compl. ¶ 155.)  Plaintiff alleges that the Silver Lake employees "clutched [her] by her shoulders, and grabbed her personal cell phone" before "push[ing] [her] toward the facility door, attempting to throw her out of the facility."  (*Id.* ¶ 156.) Plaintiff initiated this action on March 25, 2021, (*see* Compl.), approximately twenty months after the alleged altercation and eight months after the statute of limitations on her claims expired.  Plaintiff's civil assault and battery claims are therefore untimely.  *See Nachmany v. FXCM, Inc.*, No. 16-CV-225, 2020 WL 178413, at *8 (S.D.N.Y. Jan. 9, 2020) (dismissing time-barred civil assault and battery claims); *Lattibeaudiere v. AMR Servs. Corp.*, No. 95-CV-5269,

1996 WL 518076, at *1 (E.D.N.Y. Sept. 3, 1996) (same).  Accordingly, the Court dismisses Plaintiff's assault and battery claims as time-barred.

Similarly, Plaintiff's IIED claim is untimely.  Plaintiff claims that she was "emotionally stabbed," (Am. Compl. ¶ 174), and subjected to Defendants' "extreme and outrageous conduct, which was beyond possible bounds of decency, . . . atrocious and utterly intolerable within a civilized society," (*id.* ¶ 377).  However, because Plaintiff was fired in August of 2019, (*id.* ¶ 7), and does not allege any "extreme and outrageous" conduct by Defendants within one year prior to March 25, 2021, when she commenced this action, (*see* Compl.), Plaintiff's IIED claim is untimely.  *See Sutton v. Marie*, No. 21-CV-6787, 2022 WL 3904100, at *5 (S.D.N.Y. Aug. 30, 2022) (dismissing a time-barred IIED claim); *Austin*, 2022 WL 4626485, at *10–11 (same).

Accordingly, the Court dismisses Plaintiff's assault, battery, and IIED claims for failure to state a claim.

### III.  Conclusion

For the reasons stated above, the Court grants in part and denies in part Defendants' motion.  The Court grants Defendants' motion to dismiss and dismisses Plaintiff's FLSA overtime; NYLL overtime; NYLL spread of hours; NYLL wage notice; NYLL wage statement; NYLL unlawful deduction from wages; NYLL whistleblower protection; civil assault; civil battery; and IIED claims.  The Court denies Defendants' motion to dismiss Plaintiff's claims for racial, ethnic, and ancestral discrimination pursuant to section 1981, the NYSHRL, and the NYCHRL; hostile work environment pursuant to section 1981, the NYSHRL, and the NYCHRL; retaliation pursuant to section 1981, the NYSHRL, and the NYCHRL; religious discrimination pursuant to the NYSHRL and the NYCHRL; national origin discrimination pursuant to the

NYSHRL and the NYCHRL; and aiding and abetting pursuant to the NYSHRL and NYCHRL against Kraus and Torricelli.

The Court grants Plaintiff leave to file a second amended complaint within thirty days from the date of this Memorandum and Order to replead her FLSA overtime, NYLL overtime, NYLL wage statement, and NYLL unlawful deduction from wages claims.  Plaintiff's other claims may proceed.

Dated: September 14, 2023
       Brooklyn, New York

                        SO ORDERED:


                        _____s/ MKB_____
                        MARGO K. BRODIE
                        United States District Judge